IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ASHLEY N. WALKER                                                        PLAINTIFF

v.                                                  CIVIL ACTION NO. 1:25-CV-58-SA-DAS

TRANSUNION, LLC                                                         DEFENDANT

ORDER

Ashley N. Walker, who is proceeding *pro se*, has filed an Amended Complaint [17] against Trans Union asserting violations of the Fair Credit Reporting Act ("FCRA"). Now before the Court is Trans Union's Motion to Dismiss [20]. The Court has reviewed the parties' filings, along with the applicable law, and is prepared to rule.

*Factual and Procedural Background*

On March 5, 2025, Walker initiated this litigation by filing her original Complaint [2] in the Circuit Court of Clay County, Mississippi. After removing the case to this Court, Trans Union sought dismissal for failure to state a claim. On November 25, 2025, the Court entered an Order [16] concluding that Walker's Complaint [2] fell below the requisite pleading standard. However, the Court provided Walker an opportunity to amend, particularly taking into account her *pro se* status.

Walker timely filed her Amended Complaint [17]. The crux of Walker's allegations is the existence of "multiple inaccurate, outdated, and unverifiable accounts appearing on her TransUnion consumer report. . . These accounts included charge-offs, inaccurate late payments, and fraudulent reporting." [17] at p. 1. Walker goes on to allege that she disputed the inaccurate accounts and requested verifiable documentation supporting the alleged delinquencies, which Trans Union failed to provide. She lists the nine accounts which she contends were inaccurately

included on her Trans Union consumer report. She also alleges that the report "included multiple unauthorized promotional inquiries for which [she] did not apply, give consent, or initiate[.]" *Id*. at p. 3. Walker avers that, because of Trans Union's conduct, she has been denied multiple credit opportunities, been unable to obtain reliable credit, suffered distress, and has lost financial opportunities.

The Amended Complaint [17] alleges the following five statutory violations:

> Count 1 — Violation of 15 U.S.C. § 1681e(b) — Failure to Assure Maximum Possible Accuracy
>
> Count 2 — Violation of 15 U.S.C. § 1681i(a) — Failure to Conduct a Reasonable Reinvestigation
>
> Count 3 — Violation of 15 U.S.C. § 1681b(f) — Furnishing Consumer Report Without a Permissible Purpose
>
> Count 4 — Violation of 15 U.S.C. § 1681n — Willful Noncompliance
>
> Count 5 — Violation of 15 U.S.C. § 1681o — Negligent Noncompliance

*See id*. at p. 4.

Through the present Motion [20], Trans Union again seeks dismissal of Walker's claims, arguing that the Amended Complaint [17] still fails to state a valid claim upon which relief can be granted. Walker filed a Response [22] opposing dismissal.[1]

*Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

---

[1] Trans Union filed a Motion [23] requesting that the Court strike Walker's Response [22] as untimely. While the Response [22] was indeed untimely filed, the Court, recognizing Walker's *pro se* status, will consider its substance in ruling on the Motion to Dismiss [20].

U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*., 129 S. Ct. 1937.

Ultimately, the district court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). Therefore, the reviewing court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). Still, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937.

*Analysis*

The Court will consider Walker's claims and Trans Union's respective arguments for dismissal in turn.

### I.     Counts 1 and 2

In Counts 1 and 2 of the Amended Complaint [17], Walker asserts against Trans Union violations of Section 1681e(b) for failure to assure maximum possible accuracy and Section 1681i for failure to conduct a reasonable reinvestigation.

"To prevail on a claim 'under either Section 1681e(b) or Section 1681i, a plaintiff must prove that [her] consumer reports included inaccurate information.'" *Hammer v. Equifax Inf. Servs., LLC*, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019) (quoting *McDonald v. Equifax Inc.*, 2017 WL 879224, at *6 (N.D. Tex. Mar. 6, 2017)).

Specifically concerning Section 1681e(b), to state a plausible claim, "a plaintiff must establish that (1) inaccurate information was included in [her] credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) plaintiff suffered injury; and (4) [her] injury was caused by the inclusion of the inaccurate entry." *Id.* (quoting *Norman v. Experian Info. Sols., Inc.*, 2013 WL 1774625, at *3 (N.D. Tex. Apr. 25, 2013)) (internal quotation marks and additional citations omitted).

Section 1681i concerns a reporting agency's obligation to reinvestigate and mandates that a plaintiff "establish that (1) [she] disputed the completeness or accuracy of an item of information contained in [her] consumer file at defendant and notified defendant directly of that dispute; (2) defendant did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by Section 1681i(a)(5) within the statutory period; (3) defendant's noncompliance was negligent or willful; (4) plaintiff suffered injury; and (5) plaintiff's injury was caused by defendant's failure to reinvestigate and record the current status of the disputed information or delete the item from the file." *Id.* (citing *Norman*, 2013 WL 1774625 at *3; *Waggoner v. Trans Union, LLC*, 2003 WL 22220668, at *6 (N.D. Tex. July 17, 2003)).

Here, although it was not attached to her Amended Complaint [17], the state court record (which was filed with this Court post-removal) includes a letter Trans Union sent Walker on February 14, 2025—prior to her initiation of this litigation. *See* [7], Ex. 3 at p. 8. In that letter, Trans Union is responding to an inquiry from Walker about information contained on her credit report. The letter included information about multiple accounts listed on Walker's report, specifically providing that, following an investigation, nine of the accounts were "verified as accurate" and two accounts were deleted from Walker's report. *Id.* at p. 10-17.

4

In the Amended Complaint [17], Walker alleges that, despite Trans Union's assertion, the nine accounts remaining on her credit report were not accurate. Her factual allegations in that regard are as follows:

> 10. At the time of the filed complaint by Plaintiff, the following accounts remained on her TransUnion report[:]
>
> a. ONE MAIN - reported charge-off
> b. PREFERRED CREDIT INC - reported charge off
> c. EXETER FINANCE LLC - reported charge off
> d. FIRST FRANKLIN FINANCIAL - reported charge off
> e. REGIONAL FINANCE - reported charge off
> f. USDA/RURAL HOUSING - 30 day late payment
> g. MS. DEPT of HUMAN SVC CHI - multiple late payments; fraudulent account
> h. SELF/SOUTH STATE BANK - (2) 30 day late payments
> i. COMENITY CAPITAL BANK - multiple late payments
>
> 11. After disputing these accounts over the course of one year, Plaintiff never received any documentation verifying these delinquencies from TransUnion or any furnisher.

[17] at p. 2.

Walker goes on to allege that Trans Union declined to provide information regarding the procedures it used during its reinvestigation. Additionally, she contends that Trans Union did not actually obtain "account-level documentation" for the subject accounts. *Id*. She also alleges that while Trans Union continued to report these disputed accounts prior to the initiation of this litigation, once she executed the summons in this case, Trans Union "removed all disputed accounts from [her] credit file." *Id*. at p. 3.

In seeking dismissal, Trans Union contends that Walker "fails to identify what exactly is inaccurate, why it is inaccurate and/or how the accounts should be reported." [21] at p. 6. Then, relying on a 2017 case from the District Court for the Eastern District of Michigan, Trans Union asserts that "[n]umerous courts have held that a plaintiff's broad statement that there is an

inaccuracy—without further explanation as to why—is her subjective belief which is not sufficient to support an FCRA claim." *Id*. (citing *Barakat v. Equifax Info. Servs., LLC*, 2017 WL 3720439, at *3 (E.D. Mich. Aug. 29, 2017)).

This Court has reviewed *Barakat*, 2017 WL 3720439. While Trans Union correctly points out that the district court dismissed the plaintiff's FCRA claims, that decision was made at the summary judgment stage. *Id*. at *3.

Obviously, an entirely different standard of review is applicable here. While the Court recognizes that Walker's allegations are relatively sparse, she does allege that the report contained inaccurate information. She further alleges that the same was due to Trans Union's failure to follow reasonable procedures. Notably, she also contends that she requested from Trans Union information pertaining to its procedures and that the request was denied. She further asserts that Trans Union did not immediately delete the allegedly false information from her report but that it immediately did so after she completed service of process.

Taking all of this into account, the Court, while recognizing that Walker's allegations are relatively limited, concludes that she has alleged sufficient facts to survive Rule 12(b)(6) dismissal. Discovery will shed light on the veracity of Walker's allegations. Trans Union's request for dismissal of these claims is DENIED.

*II.* *Count 3*

Walker's third claim alleges a violation of 15 U.S.C. § 1681b(f). "In order to maintain a claim under § 1681b(f), a plaintiff must establish the following three elements: (1) that there was a 'consumer report' within the meaning of the statute; (2) that the defendant used or obtained it; and (3) that the defendant did so without a permissible statutory purpose." *Haberman v. PNC Mortg. Co.*, 2012 WL 12353940, at *8 (E.D. Tex. Sept. 7, 2012) (citing *McFarland v. Bob Saks*

*Toyota, Inc.*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006)); *see also Rhodes v. McCall-N Ltd.*, 2022 WL 3349229, at *2 (S.D. Tex. July 27, 2022).

In the Amended Complaint [17], Walker alleges as follows in support of this claim:

> 15. Plaintiff's TransUnion report included multiple unauthorized promotional inquiries for which Plaintiff did not apply, give consent, or initiate any transaction. This not only violates permissible purpose, but also the privacy rights of the Plaintiff.
>
> 16. These inquiries are[:]
>
>   a. COMMUNITY LOANS of AMERI - four unauthorized inquiries
>   b. T-MOBILE - one unauthorized inquiry
>   c. CAPITAL ONE - two unauthorized inquiries
>   d. NRRM LLC - one unauthorized inquiry
>
> 17. Plaintiff did not grant permission, written authorization, or verbal consent for any of these entities to access her consumer report.
>
> 18. Plaintiff had no existing account, on-file credit application, nor permissible business relationship with these entities.

[17] at p. 3.

Walker relies on documentation she received from Trans Union relating to these inquiries. That documentation specifically advised Walker that those four entities "received your name, address and other limited information about you so they could make a firm offer of credit or insurance. They did not receive your full credit report. These inquiries are not seen by anyone but you and do not affect your score." [7], Ex. 6 at p. 17.

Walker misconstrues the applicable law as to this claim. As Trans Union emphasizes, the FCRA contains within it multiple permissible purposes pursuant to which a reporting agency may furnish a report without the consumer's consent, including (as relevant here) to a person the agency has reason to believe:

> (A)    intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer, or
>
> . . .
>
> (C)    intends to use the information in connection with the underwriting of insurance involving the consumer[.]

15 U.S.C. § 1681b(a)(3)(A), (C).

Notably, a reporting agency need not obtain the consumer's consent to furnish information pursuant to these subsections so long as the agency complies with the requirements contained in Section 1681b(c). Those requirements are that the transaction consist of a firm offer of credit or insurance and that the consumer has not notified the agency of his/her desire to be excluded from lists provided under this paragraph, among other things. *See id*. at 1681b(c)(1)(B).

Here, while Walker does allege in conclusory fashion that she did not consent to the disclosure of this information, she does not allege any facts whatsoever that Trans Union lacked a statutory basis for such disclosure. In other words, consumer consent is not the only way in which disclosure under the statute is permitted. Her failure to make any additional allegations in that regard is fatal to this claim.

Trans Union's request for dismissal of Count 3 of the Amended Complaint [17] is therefore GRANTED.

### III.    *Counts IV and V*

Counts IV and V of Walker's Amended Complaint [17] respectively allege that Trans Union's violations of the FCRA were willful (Count IV) and negligent (Count V). In light of its conclusion that Walker has stated viable claims pursuant to Sections 1681e(b) and 1681i(a), the

Court finds it appropriate to allow these claims to proceed. As noted previously, discovery will shed light on the truth or falsity of Walker's allegations.

*Conclusion*

Trans Union's Motion to Dismiss [20] is GRANTED IN PART and DENIED IN PART. Count 3 of the Amended Complaint [17] is hereby DISMISSED *with prejudice*. Walker will be permitted to proceed on the remaining claims.

The Court notes that it has extended leniency to Walker as she failed to comply with the applicable deadline for responding to Trans Union's request for dismissal. Walker should not expect leniency throughout this litigation. The Court is aware of her *pro se* status, but she still must comply with the applicable rules of litigation.

The Magistrate Judge will hold a case management conference in due course.

SO ORDERED, this the 7th day of July, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE